IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KEVIN G. SMITH, | ) | |
| | ) | |
| Petitioner, | ) | 8:10CV278 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT BAKEWELL, Warden, and | ) | MEMORANDUM AND ORDER |
| ROBERT HOUSTON, Director, | ) | |
| | ) | |
| Respondents. | ) | |

Pending before me is a Petition for Writ of Habeas Corpus (filing no. 1) submitted by Kevin G. Smith (Smith). The Respondents have answered (filing no. 6), they have submitted the state court records (filing no. 5), and they have filed a brief (filing no. 7). Smith has not responded to the brief of Respondents. The Petition will be denied, and this case will be dismissed with prejudice.

## *I. BACKGROUND*

After a jury trial, Smith was found guilty of driving while intoxicated, his third offense, and he was sentenced to 3 to 5 years in prison. He appealed his conviction to the Nebraska Court of Appeals.

The Nebraska Court of Appeals summarized the pertinent facts this way:

> The State filed an information charging Smith with driving under the influence-third offense, a Class IIIA felony, and refusal to submit to a chemical test, a Class W misdemeanor. However, prior to the start of the trial, the State dismissed the charge for refusal to submit to a chemical test.

At trial, Officer Matthew Hohensee with the Norfolk Police Department, in Norfolk, Nebraska, testified that in the early evening hours of September 23, 2007 he observed a blue and white extended cab truck turning onto Omaha Avenue with no lights on. Hohensee observed that the truck was pulling a flatbed trailer, which also had no lights on. After completing the turn, the lights were engaged and the truck continued down the street, passing Hohensee in his police cruiser. Hohensee observed that one of the taillights of the trailer had no cover and initiated a traffic stop.

As Hohensee approached the truck, he noticed numerous beer cans in the back of the truck and upon making contact with the driver, Hohensee noticed several more beer cans in the extended cab area. Hohensee observed that the cab area contained beer case containers and several more cans, some full and some empty, but could not tell if any of the cans were open. Hohensee also observed beer cans in the passenger side seat and floor.

Hohensee testified that he smelled the odor of alcoholic beverages coming from the truck and asked Smith to step out of the truck so he could better determine if the smell was coming from Smith and the truck, or just the truck. Once Smith had exited and stepped away from the truck, Hohensee determined the smell was also emanating from Smith. Hohensee further observed that Smith's eyes were bloodshot and watery and that his speech was slurred. Smith indicated that he had a few drinks, but did not elaborate on specific number. Hohensee administered a breathalyzer test which indicated that Smith had a blood alcohol level of .28, which results were suppressed prior to the trial due to issues with the calibration of the instrument. Hohensee then administered the HGN test[1] and attempted to instruct Smith as to the walk-and-turn and one-legged sobriety tests, when Smith interrupted and told Hohensee that he would not be doing either test. Hohensee arrested

---

[1] "Horizontal gaze nystagmus (HGN)" is a field sobriety test that is used by law enforcement officers to determine whether alcohol is present by observing whether the subject's eye movement is jerky as opposed to steady. *See*, *e.g.*, *State v. Bauer*, 607 N.W.2d 191, 200-203 (Neb. 2000).

Smith for driving under the influence.  Smith was taken to the Norfolk Police Department for booking[2] where he further refused to take a breath test.

At trial, Smith testified on his own behalf.  Smith explained that on the Sunday he was arrested he had spent the day going to church, watching a television show, and working outside with his son.  At around 5:30 p.m., Smith received a call to come pick up his 1962 Ford Fleetside truck which was being sandblasted.  After picking up the truck, by loading the truck up onto the flatbed trailer, Smith stopped at a gas station for fuel, where he also picked up some beer.  Smith testified that he put the beer with some ice in a cooler in the back of the truck.

Smith drove to his fiance's house, where he proceeded to have one to two beers while he unloaded the truck from the trailer.  Smith then testified that he wanted to get back to his house to put the trailer away and while en route was pulled over.  Smith testified that he had only 6 to 12 total empty beer cans in the back of the truck and had none in the cab.  Smith further testified that there were absolutely no cases or open containers.  Smith testified that he believed, from previous drinking experiences, that he knew the alcohol he drank on that evening was not enough to affect his brain and the only reason he refused the tests was because he was mad.

(Filing no. 5-2 at CM/ECF pp. 63-66.)

---

[2] A video tape of Smith while he was being booked was shown at trial.  Among other things, the video tape showed that Smith was belligerent to the police officers and non-responsive to the booking questions.  For example, Smith told the police to contact "God" in the event of a medical emergency, and Smith answered "yes" to the question whether Smith was married, widowed or divorced.  (Filing no. 5-2 at CM/ECF p. 56.)  At trial, Smith admitted his behavior "makes me look bad" because of the "stupid stuff I was saying."  (*Id.* at CM/ECF p. 57.)  He also admitted that he was "getting a little bit obnoxious" during the booking.  (*Id.*)

On April 9, 2009, the Nebraska Court of Appeals affirmed the conviction. The Court decided (1) that there was probable cause to make an arrest of Smith without a warrant (*id.* at CM/ECF p. 68); (2) that videotaped statements Smith made to police during booking did not require suppression even though Smith was in custody and had not been given his *Miranda* rights (*id.* at CM/ECF p. 71); (3) that the evidence was sufficient to convict Smith (*id.* at CM/ECF p. 73); and (4) that the sentence was not excessive (*id.* at CM/ECF p. 74). Smith sought further review before the Nebraska Supreme Court. (Filing no. 5-3 at CM/ECF p. 2.) The Nebraska Supreme Court denied the petition, and the mandate issued on July 21, 2009. (*Id.*)

Smith did not seek state post-conviction relief. Rather, on July 21, 2010, Smith signed and placed his Petition in the prison "mail box" for delivery to this court. (Filing no. 1 at CM/ECF p. 14.) He asserted three claims, and, as condensed and summarized after initial review, they are:

> Claim One: Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the police officers did not undertake the procedural safeguards required by *Miranda v. Arizona* before videotaping an exchange with Petitioner and using it against him at trial.
>
> Claim Two: Petitioner was denied his Fourth Amendment right to freedom from unreasonable search and seizure *because* he was stopped and detained by a police officer while driving properly and without breaking any laws.
>
> Claim Three: Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the state destroyed, lost, or withheld the videotape of the police officer stopping Petitioner, the trial judge did not allow the jurors to see the inventory sheet from the truck impounding, and the trial judge did not provide a spoliation inference instruction to the jury.

## *II. ANALYSIS*

Smith's claims are easily resolved. Briefly, I next explain why that is so.

Claims one and two fail because the Nebraska Court of Appeals carefully considered them. As a result, I must defer to the decision of the Court of Appeals.

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision on the merits, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With regard to the deference owed to the conclusions of law set forth in a state court's decision on the merits, a federal court may not grant a writ of habeas corpus unless the state court's legal conclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Regarding claim one, asking routine booking questions does not amount to interrogation under *Miranda* even if the information provided by a defendant turns out be incriminating. *See*, *e.g.*, *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010) (collecting cases). Thus, the Nebraska Court of Appeals did not act contrary to, or unreasonably apply, federal law when it determined that *Miranda* did not bar the video tape showing the defendant acting in a belligerent and non-responsive manner during the booking process. The same is true regarding claim two. There is nothing unreasonable about the Nebraska Court of Appeals'

determination that the facts–driving without lights in the early morning hours, bleary eyes, beer cans littering the vehicle, slurred speech, the smell of alcohol about Smith's person and so forth–established probable cause.

Claim three has been procedurally defaulted. That claim–the police violated Smith's rights because they lost or destroyed relevant evidence and the trial judge erred in how he dealt with the missing evidence–could have been raised on direct appeal, but Smith failed to do so. As a result, claim three cannot now be raised in the state courts nor considered by this court.

The Nebraska Supreme Court has stated that the need for finality in the criminal process requires that a defendant bring all claims for relief on direct appeal if those claims are then known, and the failure to do so will result in forfeiture of such claims. *See*, *e.g.*, *State v. Hall*, 646 N.W.2d 572, 579 (Neb. 2002). In that same vein, a "motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *State v. Lotter*, 664 N.W.2d 892, 911 (Neb. 2003). *See also Akins v. Kenney*, 410 F.3d 451, 455-56 n. 1 (8th Cir. 2005).

Here there is no reason to think that Smith could not have presented claim three on direct appeal. Consequently, he has no remedy under Nebraska law to redress the grievance presented by claim three. As a result, and pursuant to 28 U.S.C. § 2254(b)(1), the failure to assert claim three on direct appeal, and the inability to present claim three to the state courts as a consequence, means that this court is precluded from considering the claim *unless* Smith fits into one of two exceptions. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006), *cert. denied*, 127 S. Ct. 2256 (2007). That is, Smith must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute claim three. *Id.* He has done neither. Therefore, claim three must be denied because it has been procedurally defaulted.

IT IS ORDERED that the Petition for Writ of Habeas Corpus (filing no. 1) is denied with prejudice.   A separate judgment will be issued.

DATED this 20th day of October, 2010.

                                    BY THE COURT:

                                    *Richard G. Kopf*
                                    United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.